UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

Thomas Charron and
Kathleen Charron,

        Debtors.
_____/

Case No.: 15-54513
Chapter: 13
Hon. Walter Shapero

## OPINION SUSTAINING, IN PART, CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION

### Introduction

The Chapter 13 Trustee objected to the confirmation of Debtors' proposed Chapter 13 plan, arguing primarily that it was not proposed in good faith because the plan excludes from Debtors' current monthly income certain benefits from a City of Detroit Police and Fire Pension Plan. Debtors argue that because such an exclusion is permitted for Social Security benefits, the same exclusion should also be permitted as to these pension benefits. For the reasons that follow, the Court will sustain the Trustee's objection as to this issue, and overrule the Trustee's other objections.

### Facts

The facts in this case are not in dispute. Debtors proposed a 60 month Chapter 13 plan that contemplates monthly payments of $494.59. The plan estimates that $22,598.15 will be available for Class 9 General Unsecured Creditors. Debtors' Schedule F reflects $200,603.00 of unsecured claims. Schedule I indicates Mr. Charron is not employed and has monthly income comprised of $280.90 from Social Security and $2,167.36 from a "firefighter disability pension," stemming from his prior employment as a City of Detroit, Michigan firefighter. Mrs. Charron is employed as a registered nurse for Botsford Hospital, earning a monthly gross income of $7,418.00, with a monthly take-home income of $5,119.00. Schedule I indicates that the Debtors' combined

1

monthly income is $7,567.26. Schedule J indicates that the Debtors' monthly expenses are $5,038.31, thus leaving a monthly net income of $2,528.95.

## Discussion

### Whether the Pension Benefits are "Current Monthly Income" and Thus Must be Committed to Debtors' Plan

The Chapter 13 Trustee objected to the confirmation of Debtors' plan, arguing primarily that it was not proposed in good faith because Mr. Charron is not committing the referred-to pension benefits to the plan. This argument raises the question of whether the Court should extend its ruling in the case of *In re Mihal*, No. 13-54435, 2015 WL 2265790 (Bankr. E.D. Mich. May 6, 2015) to such pension benefits. In that case, this Court held (1) that a debtor is required to commit all "current monthly income" to a Chapter 13 plan; (2) that a debtor's Social Security benefits are not included in 11 U.S.C. § 101(10A)(b)'s definition of "current monthly income"; and (3) therefore, confirmation of a plan cannot be denied solely on the argument that failure to commit such Social Security benefits to the plan constitute a lack of good faith. Mr. Charron's pension comes from the City of Detroit Police and Fire Pension Plan. It is the Court's understanding that many years ago, pursuant to an option to do so contained in the Social Security Act, the City of Detroit opted out of providing Social Security benefits to certain employees and instituted the City of Detroit Police and Fire Pension Plan (which was most recently amended and restated on July 1, 2014 in the City of Detroit's Chapter 9 Plan of Reorganization). Debtors here argue that Mr. Charron's pension benefits are, and should be considered as, functional substitutes for Social Security benefits for all intents and purposes, and therefore *Mihal*'s ruling should be extended and employed to overrule the Trustee's objections to confirmation. The Trustee did not object to Mr. Charron's failure to commit to the plan his

2

$280.90 monthly Social Security benefit income, conceding that *Mihal* controls as to that income.

*Mihal* was grounded in two distinct legal bases. The first was the plain language of § 101(10A)(b), which states:

> (10A) The term "current monthly income"—
> ***
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), *but excludes benefits received under the Social Security Act*, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

(emphasis added). Logic and rules of statutory construction, including *expressio unius est exclusio alterius*, preclude stretching that very specific limited language of exclusion to cover these pension benefits, particularly in light of the fact that the provision not only excludes benefits received under the Social Security Act, but two other specified categories of payments as well – thus reinforcing the application of *expressio unius* to this situation.

The second basis, which was described in *Mihal* as "an independent basis for this decision", was a specific provision of the Social Security Act that stated:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, *or to the operation of any bankruptcy or insolvency law.*

*Mihal* at *3 (quoting 42 U.S.C. § 407(a) (emphasis added)). That provision specifically applies to payments under the Social Security Act, which can only reasonably mean Social Security payments provided for in, and paid and administered under, the Social Security Act itself.

3

Nor is the Court persuaded that the "anti-assignment" provision included in the Police and Fire Retirement System Plan supports the Debtors' position. That Plan document, in section 18.2, provides:

> The right of a person to a pension, annuity, the return of Accumulated Voluntary Employee Contributions and/or the return of Accumulated Mandatory Employee Contributions, the Retirement Allowance itself, to any optional form of benefit, to any other right accrued or accruing to any person under the provisions of this Retirement System, and the monies in the various funds of the Retirement System *shall not be assignable and shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency law, or any other process of law whatsoever*, except as specifically provided in this Combined Plan Document or by an eligible domestic relations order of a lawful court.

http://www.pfrsdetroit.org/Portals/PFRS2/Documents/EM_Order_PFRS_Combined_Plan.pdf (last visited May 13, 2016) (emphasis added). Apart from the conclusion that the Bankruptcy Code provision as above interpreted should carry the day, in any event, the cited Pension Plan provision (while similar to the language of 42 U.S.C. § 407(a) discussed in *Mihal*) is one of contract. It is one thing for benefit payments, as a matter of law, to be excluded from the bankruptcy estate (*see* § 541(c)(2)) or from "current monthly income" (*see Mihal*). It is quite another thing for benefit payments to be excluded by virtue of *a contract* between the debtor and his employer and/or labor union. In any event, as noted, the unambiguous provisions of the Bankruptcy Code should control.

The Court is also not persuaded by Debtors' arguments that Mr. Charron's pension benefits should be treated similarly to Social Security benefits because the Internal Revenue Service deals with the City of Detroit Police and Fire Pension Plan benefits by (a) treating that pension plan as a Federal Insurance Contribution Act replacement plan; and (b) offsetting pension plan beneficiaries' Social Security benefits by the amounts received through the pension (presumably the reason Mr. Charron receives monthly Social Security benefits of only $280.90). Tax

treatment under the Internal Revenue Code carries little relevance and weight in light of the very specific Bankruptcy Code provisions involved here. The Bankruptcy and Internal Revenue Codes are two very different statutes designed for very different purposes.

The Court is also not persuaded by the case principally relied upon by Debtors, *In re McPhee*, No. 13-36046-KRH, 2014 WL 4211068 (Bankr. E.D. Va. Aug. 26, 2014). That case involved Chapter 13 debtors who were dual U.S. and Canadian citizens and received income from both U.S. Social Security and Canada's analogue: Old Age Security. The reason that Court confirmed a Chapter 13 plan that excluded both such retirement benefit incomes was because of a treaty between the U.S. and Canada providing for the equal treatment under the laws of both countries of each country's benefits under their respective retirement programs. That Court concluded that the treaty was self-executing and thus had equal force with the Bankruptcy Code and the Social Security Act. Thus, *McPhee* is distinguishable.

The Court is more persuaded by the more analogous cases cited by the Trustee. In *In re Moose*, No. 11-51816, 2012 WL 954713 (Bankr. M.D. N.C. Mar. 20, 2012), one of the Chapter 13 debtors received benefits under the Civil Service Retirement System (CSRS) in lieu of Social Security benefits. That Court opined:

> The plain and unambiguous language of § 101(10A) requires the Court to find that CMI does include CSRS benefits. The statute at issue specifically identifies only three sources of funds that are excluded from CMI: benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity, and payments to victims of international or domestic terrorism. While the Court does not disagree with the Debtors that the definition of CMI does appear to penalize a debtor who receives CSRS benefits in lieu of social security benefits, that is not a basis upon which the Court can find otherwise given the clear language of § 101(10A).

*Id.* at *2 (internal citation omitted).[1] A similar approach was taken by the Court in *In re Scholz*, 447 B.R. 887 (B.A.P. 9th Cir. 2011), a case involving a Chapter 13 debtor who received Railroad Retirement Act (RRA) benefits, and in which that Court opined:

> In sum, the inclusion of RRA Benefits within the definition of CMI is both plain on the face of the statute and not absurd. Consequently, even if that inclusion were inadvertent, Congress rather than the courts should fix the CMI definition to expressly exclude RRA Benefits if that is what Congress actually meant to do. Thus, we hold that RRA Benefits fall within the statutory definition of CMI.

Some might see the result of this Court's ruling as being somehow inequitable or unfair to recipients of such pensions, as compared to recipients of Social Security benefits, given that they are both forms or types of pensions. To the extent that is a concern, equating them for purposes involved in this case is a matter for Congress and not this Court. Accordingly, for the indicated reasons, Debtors' plan cannot be confirmed because it does not comply with the § 1325 requirement to commit all of their current monthly income.

### The Trustee's Other Objections to Confirmation

The Trustee alleges that Debtors' plan is filed in bad faith because they failed to properly and timely disclose their exclusion of the Social Security and pension income from the plan. The Court will overrule this objection because, although the Debtors perhaps could have more fully and promptly articulated their specific legal position to the Trustee, it cannot be said that they concealed that position in bad faith. For example, Debtors' Chapter 13 Statement of Current Monthly Income (Dkt. 8), which was filed on the petition date of October 1, 2015, provides on page 4:

---

[1] It is worth noting that, on further appeal, the Ninth Circuit Court of Appeals also ruled against the debtors, but solely on grounds of an "anti-anticipation clause" that is specific to the RRA, and thus inapplicable here. 699 F.3d 1167 (9th Cir. 2012).

6

> **Non-CMI - Social Security Act Income**
> Source of Income: **SS Retirement**
> Constant income of **$280.90** per month.
>
> **Non-CMI - Excluded Other Income**
> Source of Income: **Detroit & Police Fire Disability**
> Constant income of **$2,166.23** per month.

In any event, whatever failure of communication originally existed has since been corrected, and the matter has been decided on the merits, thus mooting the Trustee's allegation of original nondisclosure.

The Trustee also alleged that Debtors failed to disclose a $5,000 retainer paid to their attorney, Mr. Montera, who appeared as co-counsel for Debtors for the sole purpose of representing them with respect to the aforementioned pension benefit issue. The Court notes that Debtors' petition (Dkt. 1) includes a Statement of Financial Affairs that sets forth that payment to Mr. Montera. However, a Statement Pursuant to Fed.R.Bankr.P. 2016(b) was not then filed with respect to Mr. Montera's fees (only Mr. Keyes, the Debtors' main attorney, then filed such a statement). However, on April 17, 2016, Mr. Montera did file the appropriate Statement Pursuant to Fed.R.Bankr.P. 2016(b) disclosing that retainer. The Court thus finds that the retainer was in fact originally disclosed, though the appropriate attorney statement was filed belatedly, and that such does not warrant a denial of confirmation on the basis of bad faith.

## **Conclusion**

For the foregoing reasons, the Trustee's objections to confirmation are sustained, in part, and confirmation of the proposed plan is denied. The Trustee shall present an appropriate order.

**Signed on May 13, 2016**

```
                                    /s/ Walter Shapero
                            Walter Shapero
                            United States Bankruptcy Judge
```